## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, **Luis Polo**, being duly sworn, do hereby depose and state the following:

1.      I am a Border Patrol Agent with the United States Border Patrol and have been so employed since March 27, 2006.  As a Border Patrol Agent, I have gained experience in conducting investigations related to the illegal entry of aliens into United States.  I attended the Federal Law Enforcement Training Center at Artesia, New Mexico, where I received training for the purpose of accomplishing my Border Patrol duties, which includes training in immigration related law and matters.  Furthermore, I also receive training on a continuing basis for the purpose of maintaining my proficiency pertaining to Border Patrol work.

2.      On or about Saturday, April 11, 2026, **David VERA-ALMONTE** re-entered the United States illegally, upon arriving by boat at or near Cabo Rojo, Puerto Rico, after having been previously deported.  Therefore, this Affidavit is made in support of a Criminal Complaint against **VERA-ALMONTE** based on violation of **Title 8, _United States Code_, Section 1326(a)**, Re-entering the United States after being previously deported or removed.

3.      I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter.  This affidavit does not contain all the information derived from this investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed.

### PROBABLE CAUSE

4.      On or about Saturday, April 11, 2026, at approximately 08:35 a.m., an anonymous caller reported to the Puerto Rico Police Department (PRPD) an abandoned, black in color,

1

makeshift yawl type vessel, without engines adrift near the mangroves at or near a place known as "La Playita" in Cabo Rojo, Puerto Rico.

5. PRPD Marine Unit (FURA) from Cabo Rojo was notified and subsequently deployed a maritime asset (COBRA-05) to verify the information in the area where the abandoned yawl type vessel was reported, which yielded positive results.

6. Preliminary assessment suggested the vessel may be linked to a migrant venture that occurred in the early morning hours.

7. On or about Saturday, April 11, 2026, at approximately 10:05 a.m., United States Border Patrol (USBP) Ramey Sector Communication Radio Dispatch was contacted and dispatched Border Patrol Agents (BPAs) from Aguadilla to the maritime smuggling event in Cabo Rojo, Puerto Rico.

8. Upon arrival, BPAs encountered Homeland Security Investigations (HSI) Special Agents and U.S. Customs and Border Protection (CBP) Marine Interdiction Agents from the Maceda Marine Unit had responded to the area and had apprehended six (06) illegal aliens hiding in brush on the shore, including **VERA-ALMONTE.** Agents were actively searching the area for additional subjects or contraband.

9. Based on the vessel's size, abandoned clothing and life vests found, it is suspected that approximately fifty (50) individuals arrived during this event.

10. BPAs identified themselves as immigration officers and proceeded to interview all subjects encountered, including **VERA-ALMONTE.**

10. BPAs questioned all subjects, including **VERA-ALMONTE** as to their citizenship and nationality.

11. All subjects, including **VERA-ALMONTE,** freely and voluntarily admitted to

2

being unlawfully present in the United States.

12.    **VERA-ALMONTE** admitted being a citizen and national of the Dominican Republic.

13.    All subjects, including **VERA-ALMONTE,** were arrested and transported to USBP Ramey Station in Aguadilla, Puerto Rico for further investigation, processing and removal proceedings.

14.    Once at Ramey Station, all subjects, including **VERA-ALMONTE's** photograph and fingerprints were taken and entered into different law enforcement database systems.

15.    Record checks yielded positive results, indicating that **VERA-ALMONTE** possesses prior immigration and criminal history.

16.    As to **VERA-ALMONTE's** immigration history:

a.    **VERA-ALMONTE** illegally entered the United States at an unknown date, at an unknown time and at an unknown place.

b.    On November 23, 2005, **VERA-ALMONTE** was encountered at Departure Control Inspection at the Luis Muñoz Marin San Juan Airport while trying to enplane American Airlines Flight # 1742 to New York. When **VERA-ALMONTE** was questioned about his citizenship, he claimed to be a United States citizen, and presented a counterfeit Puerto Rico driver license number 4502715 with the name of "Luis M. Perez (DOB: 07/09/1986) as a form of identification. The appearance of the driver's license was very poor, and the subject was hesitant and unclear about his answers. **VERA-ALMONTE** was escorted to the secondary inspection area for further questioning. At secondary, **VERA-ALMONTE** stated that he was not a United States citizen, but that he had

3

entered the United States illegally without inspection by boat near Cabo Rojo, Puerto Rico from Nagua, Dominican Republic. At the time, **VERA-ALMONTE**, stated that he paid $25,000.00 Dominican pesos for the illegal venture to Puerto Rico. At the time **VERA-ALMONTE** was a seventeen (17) year old juvenile. **VERA-ALMONTE** processed for a Notice to Appear (NTA) before an Immigration Judge. At the time the United States Office of Refugee Resettlement (ORR) authorized placement in Boyton, Miami, Florida.

c.    On November 29, 2005, **VERA-ALMONTE** was transported and escorted from San Juan, Puerto Rico to Miami, Florida.

d.    On December 10, 2005, ORR approved **VERA-ALMONTE's** release to a sponsor residing in Norcross, Georgia.

e.    On December 14, 2005, **VERA-ALMONTE** was released from custody to his sponsor in Norcross, Georgia.

f.    On December 06, 2006, as an exercise of prosecutorial discretion, Immigration Judge terminated proceedings on **VERA-ALMONTE** to give him the opportunity of attempting to adjust status with United States Citizenship and Immigration Services (USCIS).

g.    On June 06, 2008, **VERA-ALMONTE** was arrested by the Gwinnett County Police Department for driving without license. Disposition unknown.

h.    On February 03, 2011, **VERA-ALMONTE** was arrested by the New York Police Department (NYPD) Precinct 046 for criminal possession of a controlled substance with intent to sell, criminal sale of a controlled substance,

and disorderly conduct. **VERA-ALMONTE** pled guilty to disorderly conduct and received a conditional discharge. An open-bench warrant remains on file related to these charges.

i.      On July 05, 2014, **VERA-ALMONTE** was arrested again by the Gwinnett County Police Department for driving without a valid driver's license. **VERA-ALMONTE** was convicted, sentenced to confinement time served, and fined $705.00USD.

j.      On March 30, 2018, **VERA-ALMONTE** was arrested by the Lilburn Police Department for driving without a valid driver's license.

k.      On June 02, 2018, **VERA-ALMONTE** was arrested by the Lilburn Police Department for giving a false name, address, or birth date to law enforcement and for driving without a valid driver's license. On June 28, 2018, **VERA-ALMONTE** was convicted of driving without a valid driver's license; however, **VERA-ALMONTE** was not prosecuted for the false information charge.

l.      On August 09, 2018, **VERA-ALMONTE's** next court hearing was held. An Immigration Judge issued a removal order on behalf of **VERA-ALMONTE.**

m.      On September 06, 2018, **VERA-ALMONTE** was officially and physically removed, for the first time, from the United States to the Dominican Republic from the Port of Atlanta, Georgia.

n.      On May 16, 2023, **VERA-ALMONTE** was encountered by USCG upon intercepted at sea attempting to re-enter the United States through Puerto

Rico.   At the time, **VERA-ALMONTE** provided a false name, identifying himself as "PEREZ, David". **VERA-ALMONTE** was repatriated back to the Dominican Republic.

o.       On or about Saturday, November 25, 2023, **VERA-ALMONTE** was encountered when CBP Officers responded to a United States Coast Guard (USCG) request for assistance regarding possible stowaways onboard Tug Sarah Dann. Tug Sarah Dann was towing a barge named DBL-76 (diesel fuel barge) IN ROUTE FROM Galena Park, Texas to San Juan Puerto Rico, with navigation course proximity of ten (10) nautical miles (NM) from the Dominican Republic. CBP Anti-Terrorism Contraband and Enforcement (ATCET) responded and conducted a search of the tug vessel and barge in conjunction with USCG Boarding Team and apprehended twelve (12) individuals, including **VERA-ALMONTE**.

p.       On November 25, 2023, a removal order was issued on behalf of **VERA-ALMONTE**.

q.       On or about November 27, 2023, **VERA-ALMONTE** was officially and physically removed, for the second time, from the United States to the Dominican Republic from the Port of San Juan, Puerto Rico (SJU-Airport).

r.       On or about January 09, 2025, **VERA-ALMONTE** was encountered by BPAs illegally re-entering the United States upon arriving at Marias Beach, Rincón, Puerto Rico.   At the time of this maritime smuggling event, a total of eighteen (18) migrants from the Dominican Republic and Haiti were arrested, including **VERA-ALMONTE**.

6

s.      On February 11, 2025, **VERA-ALMONTE** was officially and physically removed from the United States to the Dominican Republic from the Port of Miami, Florida.

t.      On or about April 11, 2026, **SANTOS-PAULINO** illegally re-entered the United States after having arrived by boat at or near Cabo Rojo, Puerto Rico. A total of six (06) migrants from the Dominican Republic and Haiti were arrested, including **VERA-ALMONTE**. On this same date, while arrested and while in handcuffs, he not only attempted to escape from law enforcement authorities once, but twice. The first time he came back and turned himself in; on the second time while being transferred from one marked Border Patrol unit to another marked transport Border Patrol vehicle, **VERA-ALMONTE** fled running attempting to abscond and to evade law enforcement actions. A Border Patrol Agent had to chase running after him and tackled **VERA-ALMONTE** to the ground. BPA assumed custody of **VERA-ALMONTE**.

17.    After his arrest, Border Patrol Agents advised **VERA-ALMONTE** of his right to legal representation and his right to speak with the Consular Officer of his native country, the Dominican Republic.

18.    **VERA-ALMONTE** re-entered the United States at a place other than a designated Port of Entry.

19.    **VERA-ALMONTE** is a national and citizen of the Dominican Republic who does not possess any immigration documents allowing him to enter, re-enter and/or to remain in the United States legally, to include but not limited, the lack of express consent from the Attorney General of the United States, or his successor, the Secretary of the Department of

7

Homeland Security, to reapply for admission into the United States. Furthermore, **VERA-ALMONTE** was not inspected, admitted, or paroled into the United States by an Officer of the Bureau of Customs and Border Protection.

20.    **VERA-ALMONTE** does not have any petitions pending with the Bureau of Citizenship and Immigration Services.

21.    Based upon my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, I believe that sufficient probable cause exists to demonstrate the commission of a violation of federal law by the above-mentioned subject, to wit, a violation of Title 8, *United States Code,* Section 1326(a).

Luis Polo
Border Patrol Agent

Subscribed and sworn pursuant to FRCP 4.1 at 3:52PM by telephone, this 14th day of April 2026.

Honorable Marshal D. Morgan
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO